[Cite as *State v. Willey*, 2020-Ohio-3172.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| CHACE WILLEY | : | Case No. CT2019-0069 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Court of Common
                                Pleas, Case No. CR2019-0177

JUDGMENT:                       Affirmed

DATE OF JUDGMENT:               June 2, 2020

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

TAYLOR P. BENNINGTON                    JAMES A. ANZELMO
27 North Fifth Street                   446 Howland Drive
P.O. Box 189                            Gahanna, OH  43230
Zanesville, OH  43701

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant, Chace Willey, appeals his July 23, 2019 conviction by the Court of Common Pleas of Muskingum County, Ohio.  Plaintiff-Appellee is state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On April 4, 2019, the Muskingum County Grand Jury indicted appellant on one count of domestic violence in violation of R.C. 2919.25, a felony of the fourth degree due to a prior offense of domestic violence, and one count of abduction in violation of R.C. 2905.02.  Said charges arose from an incident between appellant and L.C., the mother of his child.

{¶ 3}   A jury trial commenced on June 13, 2019.  The jury found appellant guilty of the domestic violence count and not guilty of the abduction count.  By entry filed July 23, 2019, the trial court sentenced appellant to eighteen months in prison.

{¶ 4}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 5}  "THE TRIAL COURT ERRED BY BARRING WILLEY FROM INTRODUCING EVIDENCE MATERIAL TO HIS DEFENSE, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS, UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION, AND HIS RIGHT TO A FAIR TRIAL, AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."

II

{¶ 6}  "WILLEY'S CONVICTION FOR DOMESTIC VIOLENCE IS BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

III

{¶ 7}  "WILLEY'S CONVICTION FOR DOMESTIC VIOLENCE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

I

{¶ 8}  In his first assignment of error, appellant claims the trial court erred in barring him from introducing evidence material to his defense.  We disagree.

{¶ 9}  "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence."  *Rigby v. Lake County*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991).  In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 10} Appellant argues the trial court abused its discretion in not permitting him to present evidence of threatening messages he received from the victim, L.C., via

Snapchat. Appellant argues because L.C.'s name was associated with the messages, a sufficient foundation was provided to establish that L.C. sent the messages.

{¶ 11} The defense called appellant's brother, Lon Willey, to the stand. Defense counsel asked Lon about any threats made to appellant by L.C. T. at 262. The state objected and the trial court sustained the objection, stating, "You need to lay a better foundation. Anywhere? Anytime?" *Id.* The trial court informed defense counsel he needed to "prove it was from her and when it was." *Id.* Defense counsel proceeded to ask questions about Snapchat messages and Lon explained messages sent via the messaging app is associated with a user name. T. at 263-264. The Snapchat message he saw had L.C.'s name on it. T. at 264. Defense counsel asked if the message was threatening and the state objected. T. at 265. The trial court sustained the objection, stating, "You cannot and have not proven it was actually sent by [L.]" as "[a]nybody can grab a phone and use it, or somebody's phone and their app." *Id.* Lon did not know if the message was actually sent by L.C. *Id.*

{¶ 12} On cross-examination, Lon admitted it was easy to change one's name on Snapchat. T. at 269-270. Lon agreed the message does not show who actually sent it, and the message does not include a number or whose phone it came from. T. at 270.

{¶ 13} Evid.R. 901(A) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Lon testified he did not know if the message was actually sent by L.C. Evidence was not presented linking L.C. to the purported message. Appellant did not meet the low threshold of Evid.R. 901(A) for admissibility.

{¶ 14} Upon review, we find the trial court did not abuse its discretion in not permitting appellant to present evidence of threatening messages received via Snapchat.

{¶ 15} Assignment of Error I is denied.

II, III

{¶ 16} In his second and third assignments of error, appellant claims his conviction was against the sufficiency and manifest weight of the evidence. We disagree.

{¶ 17} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 18} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also, State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 19} Appellant was convicted on one count of domestic violence in violation of R.C. 2919.25(A) which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2901.01(A)(3) defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶ 20} L.C. testified she left work and went to Lon's home to pick up her child she shared with appellant. T. at 165. She was in her vehicle when appellant brought the child out and placed the child in the back seat. T. at 166-167. Appellant then sat in the front passenger seat in order to talk to L.C. about getting back together. T. at 167. She told him she did not want to talk. *Id.* Appellant became upset and squirted a water bottle everywhere. *Id.* As she attempted to exit the vehicle, appellant grabbed her hair multiple times, pulling her back. *Id.* She was scared. T. at 168. She felt she needed to hurry up and get out, so she ran inside Lon's home. *Id.* Appellant followed her inside and apologized, grabbed a towel, and went back to the vehicle to wipe up the water. *Id.* L.C. went back out to her vehicle because since appellant had apologized, she assumed he would "let me leave." *Id.* Outside, appellant got close to L.C.'s face and after she told him she did not want to talk, he pushed her up against Lon's vehicle by the throat "and then I slid down the truck, because I got lightheaded." *Id.* She started to yell and appellant had her in a "chokehold" and placed his other hand around her mouth so she could not scream. *Id.* Appellant raised his fist and struck her in the nose, knocking her eyeglasses off. T. at 170-171. Lon came out of his house and told appellant to get off of L.C. T. at 171. Appellant then grabbed his brother by the throat and L.C. ran to her vehicle, called the police, and drove to Love's Truck Stop. T. at 172. L.C. testified her nose was cracked on top, "it had a slit in it, it was bleeding, and it was

bruised and swollen" and there were marks on her neck.  T. at 174; State's Exhibits 3 through 7.

{¶ 21} Muskingum County Sheriff's Deputy Adam Swope was dispatched to the truck stop.  T. at 214-215.  He testified L.C. was "upset, distraught.  She was bleeding from her nose.  Appeared to be kind of rattled."  T. at 215.  Her nose was swollen a little bit, she was crying, her mascara was running down her face, her pants had some mud on them below the knees, and she "looked extremely upset, scared."  T. at 218.  Deputy Swope took photographs of L.C.'s injuries.  T. at 219; State's Exhibits 3 through 7.  He testified the injuries depicted in the photographs were consistent with the story L.C. had told him of the incident.  T. at 223-224.  Deputy Swope then went to the scene of the incident.  T. at 224.  He found L.C.'s eyeglasses in the driveway, broken.  T. at 226-227.  Appellant told the deputy he grabbed L.C.'s arm to speak with her and "she just fell to the ground."  T. at 227.  He denied striking her in the nose and grabbing her throat and her hair.  T. at 228.

{¶ 22} At the conclusion of the state's case, appellant stipulated to a prior conviction for domestic violence.  T. at 249; State's Exhibit 1.  The incident involved his mother.  T. at 310.

{¶ 23} Appellant called his brother Lon to the stand.  Lon testified he heard appellant and L.C. arguing and when he went outside, he saw both of them standing beside his truck.  T. at 256.  He did not see anything physical between them.  T. at 257.  He did not see any blood on L.C. or anything wrong with her nose.  T. at 257-258.  He told his brother "to step back and let her leave, get away from her" because L.C. "always threatened to call the cops on him for this and that."  T. at 258.  Appellant and L.C. were crying.  T. at 261.  Appellant never grabbed Lon's throat.  T. at 274.

{¶ 24} Lon's girlfriend, Rae Shaw, testified she heard appellant and L.C. arguing and when she went outside, Lon was holding appellant by his shoulders. T. at 280-281. She did not see any injuries on L.C. T. at 281-282. She heard Lon tell appellant to "let her go," "just calming him down." T. at 282-283. She did not hear any physical confrontation. T. at 289.

{¶ 25} Appellant testified prior to L.C.'s arrival, they were communicating back and forth over the phone and L.C. threatened to get a restraining order and keep their child away from him. T. at 296-297. This upset him a little bit. T. at 297. L.C. arrived and appellant was putting the car seat back together after having cleaned it. T. at 298. Appellant placed the child in L.C.'s back seat and then sat in the passenger seat. *Id.* He engaged in a conversation with her and she "sat there and listened." T. at 299. He admitted to grabbing her water bottle and squeezing it, "but it wasn't deliberately at her or anything. I just done it being arrogant." *Id.* He never touched her hair. T. at 301. L.C. got mad and appellant apologized, and both of them went into the house so he could grab some rags to wipe up the water. T. at 300. As they left to return to the vehicle, L.C. was in front of appellant and appellant "grabbed her shoulder," not aggressively, and said, "just talk to me real quick." *Id.* L.C. spun around and "dropped to the ground. She's done this many times before." *Id.* "She just kind of went into hysterics, kind of - - just kind of like yelling and crying. She's done it many times before in the past." T. at 303. It lasted about three minutes. *Id.* At that point, Lon came outside. *Id.* Appellant helped L.C. off the ground and told her to go. *Id.* Appellant did not see any blood on her or any injuries at all. T. at 304. L.C. got into her vehicle and drove away. T. at 304-305. Appellant never grabbed his brother by the neck. T. at

305.  He had no idea how L.C. got a bloody nose, but she was prone to nose bleeds.  T. at 310-311.  He denied ever hitting L.C.  T. at 315.

{¶ 26} The jury heard conflicting testimony.  The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.  *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990).  The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page."  *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).  The jury chose to believe L.C.'s version of events.  The photographs taken by Deputy Swope depicted her injuries and were consistent with her report of the incident, and her broken eyeglasses were found at the scene.

{¶ 27} Upon review, we find sufficient evidence, if believed, to support the conviction for domestic violence.  We do not find any manifest miscarriage of justice.

{¶ 28} Assignments of Error II and III are denied.

{¶ 29} The judgment of the Court of Common Pleas of Muskingum County, Ohio is hereby affirmed.

By Wise, Earle, J.

Gwin, P.J. and

Delaney, J. concur.


EEW/db